UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INSIGHT INVESTMENTS LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-788-G |
| | ) |
| NORTH AMERICAN SPECIALTY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Now before the Court is Defendant's Partial Motion to Dismiss (Doc. No. 21). Plaintiff has responded in opposition (Doc. No. 22), and Defendant has replied (Doc. No. 23). For the reasons set forth below, the Motion is denied.

I.   *Summary of the Pleadings*

On September 14, 2017, Defendant North American Specialty Insurance Company ("NASIC") issued a payment bond ("Bond") in the amount of $807,766 assuring payment to those supplying labor and/or materials in the performance of a contract between Icon Construction, Inc. ("Icon") and United Excel Corporation ("United"). Am. Compl. (Doc. No. 15) ¶¶ 11-12. The Icon-United contract required Icon to perform certain HVAC repairs to an existing dental clinic at the Vance Air Force Base and to supply a Temporary Phasing Facility to house displaced dental staff while these repairs and other improvements to the clinic were being made. *Id.* ¶¶ 7-10.

The Bond provides that it is "for the use and benefit of claimants," with "claimants" defined as those "having a direct contract with [Icon] for labor, material, or both" in the

performance of the Icon-United contract. Bond (Doc. No. 22-1) at 1. The Bond provides, in relevant part:

> The above-named Principal [Icon] and Surety [NASIC] hereby jointly and severally agree with the Obligee [United] that every claimant . . . who has not been paid in full [within 90 days of performing work or furnishing materials in furtherance of the Icon-United contract] may sue on this bond for the use of such claimant.

*Id.*

In December 2017, Icon entered into a series of agreements with Plaintiff Insight Investments LLC ("Insight") whereby Insight agreed to lease several modular building units, along with related equipment, to Icon in exchange for monthly payments. Am. Compl. ¶¶ 22-27. The modular building units were intended to serve as a Temporary Phasing Facility in satisfaction of Icon's contractual obligation to United. Icon defaulted on its payment obligations and, after several unsuccessful attempts to recover payment, Insight submitted a claim against the Bond in the amount of $485,579.20. *Id.* ¶¶ 28-35, 39. NASIC denied Insight's claim on August 23, 2018, finding that Insight did not qualify as a "claimant" under the Bond. *Id.* ¶¶ 43-44.

Insight filed the instant lawsuit on August 10, 2020, asserting claims against NASIC under the Miller Act, 40 U.S.C. §§ 3131 et seq., as well as common-law claims for breach of contract and bad faith. *See* Compl. (Doc. No. 1). Insight filed an Amended Complaint on October 12, 2020, dropping its Miller Act claim and re-urging its claims for breach of

contract and bad faith.[1]  NASIC filed the instant Motion on November 5, 2020, seeking dismissal of Insight's bad-faith claim.

II.   *Standard of Review*

Federal Rule of Civil Procedure 12(b)(6) prescribes that a defendant may seek dismissal when the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  In analyzing a motion to dismiss under Rule 12(b)(6), the court "accept[s] as true all well-pleaded factual allegations in the complaint and view[s] them in the light most favorable to the plaintiff." *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) ("[T]o withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim that is plausible on its face." (internal quotation marks omitted)).  Bare legal conclusions in a complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

---

[1] Insight separately pleads claims for "Bad Faith" and "Breach of the Duty of Good Faith and Fair Dealing." Am. Compl. ¶¶ 48-55, 65-73.  Because these claims represent the same cause of action under Oklahoma law, they will be treated together as one claim.

3

III.  Analysis

Under Oklahoma law, "[e]very contract . . . contains an implied duty of good faith and fair dealing." *Wathor v. Mut. Assurance Adm'rs, Inc.,* 87 P.3d 559, 561 (Okla. 2004). "In ordinary commercial contracts, a breach of that duty merely results in damages for breach of contract." *Id.* Due, however, to the "special relationship" that exists between an insurer and its insured, an insurer's breach of the duty of good faith and fair dealing "gives rise to a separate cause of action sounding in tort." *Id.* at 562. "An insurer's implied-in-law duty of good faith and fair dealing extends to all types of insurance companies and insurance policies," including, as relevant here, sureties and bonding agreements. *Roach v. Atlas Life Ins. Co.*, 769 P.2d 158, 161 (Okla. 1989); *see also Worldlogics Corp. v. Chatham Reinsurance Corp.*, 108 P.3d 5, 7–8 (Okla. Civ. App. 2004) (holding that a surety owed a duty of good faith and fair dealing to the obligee on a performance bond).

An insurer does not ordinarily owe a duty to deal fairly and in good faith with third parties who are "strangers to the contract of insurance." *Townsend v. State Farm Mut. Auto. Ins. Co.,* 860 P.2d 236, 237 (Okla. 1993). Thus, an "injured third party [can]not maintain an action against the tortfeasor's insurer for bad faith negotiations [or] for failure to settle claims fairly and in good faith." *McWhirter v. Fire Ins. Exch., Inc.*, 878 P.2d 1056, 1058 (Okla. 1994). Where, however, there exists a "contractual or statutory relationship" between the insurer and a third party, the third party may seek recovery against the insurer under a theory of bad faith. *Roach*, 769 P.2d at 161. A third-party beneficiary of an insurance policy "meets both criteria for assertion of the right." *Id.* (citing Okla. Stat. tit. 15, § 29 ("A contract, made expressly for the benefit of a third person, may be enforced by

him at any time before the parties thereto rescind it.")); *see also Campbell v. Am. Int'l Grp., Inc.*, 976 P.2d 1102, 1108 (Okla. Civ. App. 1999) ("Oklahoma law clearly allows third-party beneficiaries to pursue bad faith claims." (emphasis omitted)).

"[W]hether a third-party claimant is also a third-party beneficiary with standing to bring a bad faith claim against an insurer" depends on the intent of the contracting parties as reflected in the insurance policy. *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1230 (10th Cir. 2012). "Although '[i]t is not necessary that [a third] party be specifically named as a beneficiary' in order to have standing, the contract must be made 'expressly' for the third party's benefit, which 'means in an express manner; in direct or [unmistakable] terms; explicitly; definitely; directly.'" *Id.* (first and second alterations in original) (citing *Keel v. Titan Constr. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981)). "[T]he benefit cannot be enforced if it has to be implied from the terms of the contract or results incidentally from its performance." *Id.* (internal quotation marks omitted) (citing *Oil Cap. Racing Ass'n, Inc. v. Tulsa Speedway, Inc.*, 628 P.2d 1176, 1179 (Okla. Civ. App. 1981)).

Insight contends that it is a third-party beneficiary of the Bond to whom NASIC owed a duty of good faith and fair dealing.[2]  Pl.'s Resp. (Doc. No. 22) at 3-6.  Unlike liability policies, which "are procured to defend and indemnify the insured," Insight argues,

---

[2] Alternatively, Insight argues that it is entitled to proceed against NASIC pursuant to an agreement dated February 26, 2019, whereby Icon "assign[ed] to Insight all of [its] legal and beneficial right, title, interest in and ownership of Icon's claims, if any, against [NASIC], under [the Bond] . . . for NASIC's bad faith refusal, if any, to pay the claims of Insight against [the Bond]." Am. Compl. ¶ 46.  While the Court need not reach this argument, it notes that, under Oklahoma law, bad-faith claims are unassignable unless they have been reduced to judgment. *United Adjustment Servs., Inc. v. Pro. Insurors Agency, LLC*, 307 P.3d 400, 404 (Okla. Civ. App. 2013) (citing Okla. Stat. tit. 12, § 2017).

"the Bond was expressly procured to protect and pay" *claimants*—i.e., "those supplying labor and materials" in the performance of the Icon-United contract—and thus "functions more like a life insurance policy where there are specific beneficiaries 'owed the implied-in-law duty of good faith.'" Pl.'s Resp. at 5.

NASIC concedes, for purposes of this Motion, that Insight qualifies as a "claimant" under the Bond. *See* Def.'s Mot. (Doc. No. 21) at 2 (stating that the issue is "beyond the scope" of its Motion); Def.'s Reply (Doc. No. 23) at 1. NASIC nonetheless denies that Insight is a third-party beneficiary, arguing that Insight "did not purchase the [B]ond, is not the named [B]ond obligee, [and] is not an express party to the [B]ond." Def.'s Mot. at 5. Further, NASIC argues, "the [B]ond itself makes no mention of the contractual or other relationship between Icon and Insight," instead "referenc[ing] only the subcontract between Icon and United." *Id.*

The Court's analysis begins and ends with the plain language used in the Bond. *See, e.g., Keel*, 639 P.2d at 1231. The Bond declares that it is "for the use and benefit of claimants"—a class of persons to which, for purposes of this Motion, Insight undisputedly belongs. Bond at 1. This intention is consistent with the very purpose of a payment bond. Unlike a performance bond, which ensures the completion of unfinished work upon default by the principal or contractor, a payment bond ensures "pay[ment] [of] any unpaid bills of the contractor or principal." *Am. Cas. Co. v. Bd. of Educ. of Indep. Sch. Dist., No. 2, Cleveland Cnty., Moore, Okla.*, 228 F. Supp. 843, 847 (W.D. Okla. 1964). It is therefore widely recognized that a payment bond inures to the benefit of unpaid subcontractors like Insight. 17 Am. Jur. 2d Contractors' Bonds § 1 ("Performance obligations due under a

performance bond are commonly owed solely to the obligee, whereas payment bonds are intended to ensure that laborers and material suppliers will be paid in the event of a default."); Peter A. Alces, *The Law of Suretyship and Guaranty* § 10:3 (2020) ("A payment bond assures payment to laborers, subcontractors and suppliers.").

In sum, the language employed in the Bond, coupled with NASIC's concession that Insight is a "claimant," impels the conclusion that Insight is a third-party beneficiary of the Bond, which in turn impels the conclusion that Insight may proceed against NASIC on a theory of bad faith. *See Campbell*, 976 P.2d at 1108 ("Oklahoma law clearly allows third-party beneficiaries to pursue bad faith claims." (emphasis omitted)); *accord Szarkowski v. Reliance Ins. Co.*, 404 N.W.2d 502, 505–06 (N.D. 1987) (holding that bond claimant "ha[d] a right to bring an independent tort action against [the surety] for breach of [the] duty [of good faith and fair dealing]"); *Nouveau Indus. Inc. v. Liberty Mut. Ins. Co.*, No. 08 Civ. 10408(CM), 2011 WL 10901796, at *5 (S.D.N.Y. Sept. 7, 2011) (holding that bond claimant was an "intended beneficiary" of the payment bond but granting summary judgment to surety on bad faith claim due to lack of evidence of bad faith).[3]

---

[3] This conclusion is further supported by the decision of the Oklahoma Supreme Court in *Barbero v. Equitable Gen. Ins. Co.*, 607 P.2d 670 (Okla. 1980), a case cited by neither of the parties. At issue in *Barbero* was whether an unpaid subcontractor could sustain a breach-of-contract claim against the surety of a private (i.e., nongovernmental) payment bond. As in this case, the payment bond provided that it was "for the use of [] claimant[s]," with "claimant" defined as "one having direct contract with the Principal or with a subcontractor of the Principal for labor, material, or both, used or reasonably required for use in the performance of the [underlying] contract." *Id.* at 672 (internal quotation marks omitted). Applying the third-party beneficiary doctrine, the Supreme Court concluded, without hesitation, that the subcontractor had stated a breach-of-contract claim against the surety:

CONCLUSION

For the reasons explained above, Defendant's Partial Motion to Dismiss (Doc. No. 21) is DENIED.

IT IS SO ORDERED this 5th day of February, 2021.

_____
CHARLES B. GOODWIN
United States District Judge

---

> Under [the] petition's allegations, the subcontract obligated [the principal] to furnish all material and labor for the involved construction. To secure payment of labor and material the bond was executed. Plaintiffs supplied the labor and material for the specific construction covered by the bond. Surety agreed to pay materialmen and laborers if [the principal] did not. Plaintiffs were materialmen and were unpaid.
>
> . . . .
>
> Construing the contracts and bond together and with the allegations of the petition, we hold the petition does state a cause of action against Surety.

*Id.* at 673-74. Although *Barbero* did not involve a bad-faith claim, its conclusion under nearly identical facts that the plaintiff bond claimant could enforce the bond as a third-party beneficiary speaks directly to the question presented in this case.