## UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| INSIGHT INVESTMENTS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH AMERICAN SPECIALTY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |
| | )   **Case No. CIV-20-788-G** |
| NORTH AMERICAN SPECIALTY | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| SASHA M. BELL, | ) |
| | ) |
| Third-Party Defendant. | ) |

### OPINION AND ORDER

Now before the Court are the Motions for Summary Judgment filed by Plaintiff

Insight Investments, LLC ("Insight") and Defendant North American Specialty Insurance

Company ("NASIC") (Doc. Nos. 45, 77).[1]  The parties each submitted responses in

opposition (Doc. Nos. 49, 84) and replies in support of their motions (Doc. Nos. 52, 88).

In addition, with leave of the Court, the parties filed supplemental submissions addressing

Insight's Motion (Doc. No. 83, 84).

---

[1] This Order does not address NASIC's pending motion for summary judgment against
Third-Party Defendant Sasha M. Bell (Doc. No. 93).  Reference to "the parties" in this
Order is solely to Insight and NASIC.

This case involves contracts relating to a construction project overseen by the U.S. Army Corps of Engineers for renovation of a medical facility at Vance Air Force Base, near Enid, Oklahoma (the "Project").  United Excel Corporation ("UEC") was the prime contractor for the Project.  UEC subcontracted with Icon Construction, Inc. ("Icon") to design, manufacture, and install modular buildings as a temporary medical and office facility during construction, which the parties and agreements refer to as the "Temporary Phasing Facility" or "TPF."  NASIC issued a "Subcontract Labor and Material Payment Bond" (the "Bond") on behalf of Icon to ensure payments for labor and material used in the performance of the subcontract between Icon and UEC.  *See* Def.'s Ex. 4 (Doc. No. 77-4).

After the execution of the UEC-Icon Subcontract and the issuance of the Bond, Icon entered into a transaction with Insight, whereby Insight agreed to pay Icon $410,000 immediately in exchange for monthly payments over the course of the Project and a share of the proceeds from selling the TPF after the Project was completed.  Icon failed to make the required monthly payments to Insight.

Citing Icon's default, Insight submitted a claim to NASIC under the Bond, asserting that it qualifies as a "claimant" as that term is defined in the Bond.  NASIC denied Insight's claim, responding that Insight does not qualify as a claimant under the Bond.

Insight moves for partial summary judgment, asking the Court to declare (1) that Insight supplied "materials" to Icon in fulfillment of Icon's contract with UEC, and (2) that Insight is therefore a claimant under the Bond.  *See* Pl.'s Mot. at 1.  NASIC moves for

summary judgment on the basis that Insight is not a claimant under the Bond.  *See* Def.'s Mot. at 6.

I.   SUMMARY JUDGMENT STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim.  The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

A party that moves for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence admissible at trial to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury.  *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005).  The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- demonstrating "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B).  While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [trier of fact] could reasonably find for the [nonmovant]."  *Liberty Lobby*, 477 U.S. at 252.

When, however, the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies."  *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). The moving party cannot carry its burden by "pointing to parts of the record that [the movant] believes illustrate the absence of a genuine issue of material fact."  *Id.*  Rather, to obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case."  *Id.*  Thus, if a party who would bear the burden of persuasion at trial lacks sufficient evidence on an essential element of a claim or defense, all other factual issues concerning the claim or defense become immaterial.  *See Celotex*, 477 U.S. at 322; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

Regarding cross-motions for summary judgment, the Tenth Circuit has explained:

"The filing of cross-motions for summary judgment does not necessarily concede the absence of a material issue of fact.  This must be so because by the filing of a motion a party concedes that no issue of fact exists under the theory he is advancing, but he does not thereby so concede that no issues remain in the event his adversary's theory is adopted."  *Nafco Oil & Gas, Inc. v. Appleman*, 380 F.2d 323, 324-25 (10th Cir. 1967).  Accordingly, "cross motions for summary judgment are to be treated separately; the denial

of one does not require the grant of another." *Christian Heritage Acad. v. Okla. Secondary Sch. Activities Ass'n*, 483 F.3d 1025, 1030 (10th Cir. 2007). "Even where the parties file cross motions pursuant to Rule 56, summary judgment is inappropriate if disputes remain as to material facts." *Id.*

*Brown v. Perez*, 835 F.3d 1223, 1230 n.3 (10th Cir. 2016) (alteration and citations omitted).

## II.   THE SUMMARY JUDGMENT RECORD

### A.   *Evidentiary Objections and Motions*

As an initial matter, both parties challenge evidentiary material submitted by the other as inadmissible at trial and, therefore, not properly considered in deciding the respective motions for summary judgment. *See id.* at 1232 ("To determine whether genuine issues of material fact make a jury trial necessary, a court necessarily may consider only the evidence that would be available to the jury." (internal quotation marks omitted)). The Court reviews these arguments in turn.

### 1.   Insight's Objections to Evidence Submitted by NASIC (Doc. No. 53)

Insight filed objections to evidence submitted by NASIC in NASIC's Response to Insight's Motion for Summary Judgment (Doc. No. 53).  NASIC responded in opposition to the objections (Doc. No. 54), and Insight replied (Doc. No. 55).  Thereafter, Insight and NASIC submitted a Joint Notice of Stipulation (Doc. No. 76), in which Insight (a) withdrew its objections as to NASIC's Exhibits 1 through 4,[2] and (b) withdrew all of its objections as to the remaining exhibits, except for Insight's parol evidence objections as to NASIC's Exhibits 5 through 27 and Insight's hearsay and legal-conclusion objections as to NASIC's Exhibits 12 and 18.

---

[2] All exhibits discussed in this section are attached to NASIC's Response (Doc. No. 49).

As to NASIC's Exhibits 5 through 27, Insight objects that these exhibits are inadmissible because, in violation of the parol evidence rule, they are offered for the purpose of trying to alter the plain meaning of the Master Lease Agreement between Insight and Icon.  "While the parol evidence rule precludes the admission of evidence that seeks to vary, contradict or add to an integrated agreement, it does not prohibit extrinsic evidence which will not bring about this result." *First Nat'l Bank in Durant v. Honey Creek Ent. Corp.*, 54 P.3d 100, 104 (Okla. 2002).  NASIC is not a party to the Master Lease Agreement, and NASIC is not offering the exhibits attached to its Response for the purpose of arguing that any prior oral negotiations or agreements between Insight and Icon supersede, "vary, contradict or add to" the written text of the Master Lease Agreement. *Id.* Rather, NASIC argues that the Master Lease Agreement, as written, is a sham and did not fully and accurately reflect the true economic relationship between Insight and Icon.  The exhibits are therefore not barred by the parol evidence rule, and Insight's parol evidence objections are overruled.  The Court will consider evidence extrinsic to the Master Lease Agreement in determining whether Insight meets the definition of a "claimant" under the Bond.

NASIC's Exhibits 12 and 18 are court filings from litigation that took place between Insight, Icon, and UEC in the United States District Court for the Eastern District of Texas. The Court has reviewed these exhibits, and they have no bearing on the Court's consideration of the parties' motions for summary judgment here.  Insight's objections to Exhibits 12 and 18 are therefore denied as moot.

2.  Insight's Motion to Strike (Doc. No. 85)

Insight filed evidentiary objections and a Motion to Strike (Doc. No. 85) relating to evidentiary material submitted by NASIC in NASIC's Motion for Summary Judgment. NASIC responded in opposition (Doc. No. 90), and Insight replied (Doc. No. 94).

Insight raises numerous general and specific objections to NASIC's Exhibit 1,[3] the affidavit of Mansour Khayal, moving to strike that affidavit in its entirety.  First, Insight generally objects that the Khayal Affidavit does not establish a foundation for personal knowledge.  Mr. Khayal states in his affidavit, however, that he is the president of Icon and that the statements made are based on his personal knowledge.  Insight does not explain how Mr. Khayal, in his role as president of Icon, is not competent to offer testimony about the general facts and circumstances of Icon's performance relating to the UEC-Icon Subcontract and Icon's transaction with Insight.  The Court therefore denies Insight's request to strike the Khayal Affidavit in its entirety.

Insight additionally objects that the Khayal Affidavit is irrelevant and that certain portions contain impermissible opinion testimony, testimony beyond Mr. Khayal's personal knowledge, legal conclusions, and hearsay.  The Court agrees that portions of the Khayal Affidavit are irrelevant to the Motions and contain statements that exceed the scope of permissible testimony.  The Court does not rely on these portions of the Khayal Affidavit, specifically paragraphs 8 through 11 and paragraphs 13 through 15.  Insight's

---

[3] All exhibits discussed in this section are attached to NASIC's Motion for Summary Judgment (Doc. No. 77).

objections to these paragraphs are sustained, and Insight's remaining objections to the Khayal Affidavit are overruled.

Insight in addition raises objections as to NASIC's Exhibits 9, 16, 18, and 19.  The Court has reviewed these exhibits, and Exhibits 9, 16, and 18 have no bearing on the Court's consideration of the parties' motions for summary judgment.  Insight's objections to Exhibits 9, 16, and 18 therefore denied as moot.  As to Exhibit 19, Insight argues that it is irrelevant and inadmissible under the parol evidence rule.  Exhibit 19 is a transcript of proceedings before the United States Bankruptcy Court for the Eastern District of Texas and includes testimony from Mr. Khayal regarding facts and circumstances of the Icon-UEC Subcontract and dealings with Insight.  The portions of the transcript containing Mr. Khayal's testimony on the UEC-Icon Subcontract and the Icon-Insight transaction are relevant, and Insight's relevance objection is overruled.  Insight's parol evidence objection is overruled for the same reasons discussed above.  The Court does not consider or rely on the remaining portions of Exhibit 19, which present colloquy between the court and attorneys at the bankruptcy motion hearing.

3.  <u>NASIC's Motion to Strike Reid Lukes' Affidavit (Doc. No. 99)</u>

NASIC filed a Motion to Strike (Doc. No. 99), seeking to strike portions of an affidavit by Reid Lukes (Doc. No. 84-1) that was submitted by Insight with its Response to NASIC's Motion for Summary Judgment.  Insight responded in opposition (Doc. No. 103), and NASIC replied (Doc. No. 108).

NASIC argues that Mr. Lukes' deposition testimony, taken after the submission of his affidavit, contradicts portions of his affidavit.  The Court, however, need not and does

not rely on the Lukes Affidavit in considering the parties' respective motions for summary judgment, beyond consideration of the Insight-Icon transaction documents attached to that affidavit.  NASIC does not seek to strike the documents attached to the Lukes Affidavit, and neither party contests the authenticity of these attachments.  NASIC's Motion to Strike is therefore denied as moot.

4.  NASIC's Motion for Leave to Supplement (Doc. No. 125)

NASIC filed a Motion for Leave (Doc. No. 125), asking to supplement the summary judgment record with excerpts from depositions of Mr. Khayal and Mr. Lukes.  Insight responded in opposition (Doc. No. 128). and NASIC replied (Doc. No. 129).

NASIC filed its Motion for Leave more than five months after it had filed its Motion for Summary Judgment.  NASIC does not adequately explain why the ample time provided for discovery was insufficient to prepare its Motion for Summary Judgment, including the conducting of the referenced depositions, or why it did not move for additional time prior to filing that Motion.[4]  The Court will not permit NASIC to submit additional summary judgment materials at this stage.

B.  *Undisputed Material Facts*

The facts relied upon in the discussion below are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to the applicable nonmoving party.

---

[4] On May 5, 2021, NASIC requested additional time to conduct discovery to supplement its response to Insight's Motion for Partial Summary pursuant to Federal Rule of Civil Procedure 56(d) (Doc. No. 50).  The Court granted the request (Doc. No. 69), permitting both parties to supplement the record relevant to that Motion.  *See* Doc. Nos. 83, 84.

1.  <u>The Project</u>

On September 30, 2016, UEC executed a written contract with the United States Army Corps of Engineers to act as the general contractor for the Project.  *See* Def.'s Mot. (Doc. No. 77) at 6-7; Def.'s Ex. 1, Khayal Aff. (Doc. No. 77-1).

Effective April 3, 2017, UEC executed a written subcontract (the "UEC-Icon Subcontract") with Icon to design, manufacture, deliver, and install the TPF.  *See* Def.'s Ex. 3 (Doc. No. 77-3).  In the Subcontract, UEC agreed to pay Icon $807,766, which included 20 monthly lease payments of $19,000 (a total of $380,000) for use of the completed TPF during the Project.  *See id.* at 2, 4.  In the event the TPF was used at the Project beyond the 20-month term, the monthly rental rate was set at $17,250 for each subsequent month of use.  *See id.* at 2.

On September 14, 2017, NASIC issued a "Subcontract Labor and Material Payment Bond" on behalf of Icon as Principal.  *See* Def.'s Ex. 4 (Doc. No. 77-4).  The bonded amount was $807,766 for the use and benefit of "claimants" as defined in the Bond for "all labor and material used or reasonably required for use in the performance of the subcontract."  *Id.* at 1.  The Bond expressly identifies the UEC-Icon Subcontract and incorporates it by reference.  *See id.*

On August 28, 2017, Icon began manufacturing the TPF at its facility in Durant, Oklahoma.  Stipulation (Doc. No. 76) ¶ 1.  Icon completed construction of the 13 modular units comprising the TPF in October and November 2017.  Khayal Aff. at 2.  Icon thereafter delivered the modular units directly to Vance Air Force Base, and Icon performed the work on site to install the TPF units.  *Id.*  The installation of the TPF was substantially complete

by December 31, 2017.  *See* Def.'s Mot. at 8; Def.'s Ex. 7 (Doc. No. 77-7); Pl.'s Resp. at 3.

Insight did not manufacture, deliver, or install the TPF at the Project site at Vance Airforce Base.  Stipulation ¶ 3.

2. The Insight Transaction

Prior to the Project, Insight had held itself out to Icon as a financing company and sent Icon marketing materials for its modular building financing programs.  *See* Def.'s Ex. 10 (Doc. No. 77-10).  Ampil is a subsidiary of Insight and was acting as Insight's agent and representative in all dealings with Icon.  Stipulation ¶ 2.  Insight employee Reid Lukes communicated with Icon, sometimes using an Insight e-mail address and sometimes using an Ampil e-mail address.  *See* Def.'s Ex. 10 (Doc. No. 77-10).[5]

In October 2016, Icon contacted Insight to discuss a potential financing arrangement relating to Icon's construction and lease of the TPF to UEC under the UEC-Icon Subcontract.  *See* Def.'s Ex. 13 (Doc. No. 77-13) at 5-6.  After a period of apparent inactivity, the discussions resumed in August 2017.  *See id.*; Def.'s Ex. 14 (Doc. No. 77-14).

On September 11, 2017, in an email thread titled "Vance AFB Bid Project Lease," Mr. Lukes wrote to Eric Salomone, an Icon employee, asking for documentation and details for the UEC-Icon Subcontract.  Def.'s Ex. 13 (Doc. No. 77-13) at 3.  Mr. Salomone sent Mr. Lukes a copy of the UEC-Icon Subcontract and explained that this agreement provided

---

[5] The Court interprets any such communications from Mr. Lukes as made on behalf of Insight.  *See* Def.'s Ex. 10 (Doc. No. 77-10).

for monthly rent payments from UEC to Icon of $19,000 per month for a period of 20 months for use of the TPF, and then monthly rent payments from UEC to Icon of $17,250 per month if the TPF was needed beyond the 20-month period. *Id.* Mr. Lukes then asked, "How much were you looking for us to fund?" *Id.* at 2. Mr. Salomone replied, "We were looking for you to fund $511,433 for the building." *Id.* Mr. Lukes responded that this amount was more than Insight would typically invest in these circumstances and proposed funding Icon $466,501 instead. *See id.* 1-2.

The discussions between Insight and Icon continued into December 2017. *See* Def.'s Ex. 14 (Doc. No. 77-14). After exchanging numerous e-mails about the details of the UEC-Icon Subcontract and the proposed funding agreement between Insight and Icon, Mr. Salomone sent Mr. Lukes an e-mail on December 28, 2017, stating:

> Icon accepts the revised up-front funding of the building at $410,000.00 (from the original $466,501.00). As discussed on the phone, we would like to receive the funding as early as possible. Also, should the lease not get extended beyond the initial 20 month term long enough for Icon to recover the remaining $56,501.00 from the original building price via a 50% split of the extension lease payments, Icon would share in the future sale or lease of the building until we recover at least said remaining $56,501.00.

Def.'s Ex. 15 (Doc. No. 77-15) at 2. Mr. Lukes responded, after several e-mails about documentation, that "[o]nce we receive our return on our equity, Insight will share all future rents and/or sales of the building 50/50." *Id.* at 1.

Insight generated two internal documents outlining aspects of the transaction. The first is a document titled "Interest Rate Quote Sheet," and it states in a field for "Transaction Details" that "[t]his transaction is for Vance Air Force. Icon Construction will be the obligor. The Prime will make payments to our lockbox. Building is already on site.

12

Acceptance 12/31.  Commencement 1/1, first payment due 1/31/18 (monthly billing in arrears)."  Def.'s Ex. 7 (Doc. No. 77-7) at 1.  The second is titled "Done Deal Worksheet" that lists the "Done Deal Date" as December 29, 2017, the Insight salesperson as Reid Lukes, and the customer as Icon Construction Inc.  *See* Def.'s Ex. 8 (Doc. No. 77-8) at 1. The Notes field of the worksheet states: "IC Approved up to 12.5pts of equity.  50/50 remarketing split at EOT after Insight recovers 30% OEC.  Icon Construction is Obligor/Lessee.  Prime contractor will direct payments to our Lockbox.  End User is Vance Air Force Base.  MLA + Schedule to be signed now. . . . . Book in December with 12/31/17 acceptance, 1/1/18 lease commence and 1/31/18 first payment (bill in arrears). Funding/vendor payment in January."  *Id.* at 3.

In connection with the affidavit of Reid Lukes, attached by Insight to its Response (Doc. No. 84), Insight submitted several of the executed documents for the transaction between Insight and Icon, including (1) a Master Lease Agreement, signed by Icon and Insight, effective December 29, 2017; (2) Amendment No. 1 to Schedule No. 1 to the Master Lease Agreement, effective December 29, 2017, signed by Icon, providing that Icon will direct UEC to send rent payments under the Icon-UEC Subcontract for the TPF directly to Insight; and (3) a Remarketing Agreement, effective September 14, 2017, signed by Icon without a date.  *See* Pl.'s Ex. A (Doc. No. 84-1) at 4-18.

Icon issued an invoice to Insight dated December 29, 2017, listing under "Contract Item" a "179x60 modular transition space located at Vance AFB Enid OK to be leased for twenty month term" with a total amount due of $410,000.  *See* Pl.'s Ex. 5 (Doc. No. 45-1)

at 27.  Insight thereafter issued a check dated January 9, 2018, for payment to Icon of $410,000.  *See id.* at 28.

Subsequently, Icon failed to make required monthly payments to Icon.  *See* Def.'s Ex. 13 (Doc. No. 49-13) at 2.  On July 9, 2018, Insight submitted a claim under the Bond to NASIC, asserting that Insight had "a direct contract with Icon for the supply of material i.e., the Modular Unit."  *Id.*  Insight's claim letter explained that Icon committed to pay Insight $410,000 for the TPF payable in 20 monthly installments of $19,000 pursuant to the Master Lease Agreement between Insight and Icon and its accompanying schedules and amendments.  *See id.* at 1.

On August 23, 2018, counsel for NASIC wrote a letter to Insight denying Insight's claim under the Bond, stating that NASIC had concluded that Insight did not qualify as a claimant under the Bond because Insight did not provide labor or material to Icon for use in the performance of the subcontract.  *See* Pl.'s Ex. 6 (Doc. No. 45-1) at 32.  NASIC's denial letter further stated that NASIC had concluded based on its review of documentation submitted by Insight that the substance of the Insight-Icon transaction was "to provide funding for [Icon] in the form of a loan or advance of $410,000 to cover certain costs of its construction of the modular unit in return for the right to receive the monthly rentals that are owed by United Excel Corporation ("Obligee") under the Subcontract with Principal plus a 50/50 share with Principal in future rentals and/or sale of the modular unit after the

14

modular unit is returned from its current location at Vance AFB to Principal's facility in Durant, OK." *Id.* at 30.

III.   DISCUSSION

   A.   *Insight's Motion for Summary Judgment*

In Insight's motion for partial summary judgment, it asks the Court to declare (1) that Insight supplied "materials" to Icon in fulfillment of Icon's contract with UEC, and (2) that Insight is therefore a "claimant" under the Bond.  *See* Pl.'s Mot. at 1.

Rule 56(a) prescribes that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  In its Amended Complaint, Insight asserts two causes of action against NASIC, one for breach of contract and a second for bad faith.[6]  *See* Am. Compl. (Doc. No. 15).  Insight, however, does not discuss either of its two claims in its Motion, cite to the essential elements of its claims, or attempt to show that it has established those elements as a matter of law.

Insight instead asks the Court to make a legal determination as to its status under the Bond.  This is not an appropriate basis for a summary judgment motion under Rule 56, as the Court may not enter judgment as to one issue or element of a plaintiff's claim.  *See William Powers v. Emcon Assocs., Inc.*, No. 14-cv-3006, 2017 WL 4102752, at *2 (D. Colo. Sept. 14, 2017) ("This court, as well as others, ha[s] expressly found motions seeking

_____

[6] Insight separately pleads claims for "Bad Faith" and "Breach of the Duty of Good Faith and Fair Dealing."  *See* Am. Compl. ¶¶ 48-55, 65-73.  These claims represent the same cause of action under Oklahoma law.

to resolve only one issue relevant to a plaintiff's claims to be entirely inappropriate under any provision of Rule 56."); *Cardenas v. KanCo Hay, L.L.C.*, No. 14-1067, 2016 WL 3881345, at *7 (D. Kan. July 18, 2016) ("While plaintiff's motion states that plaintiff is asking for partial summary judgment, the motion does not describe a claim or part of a claim upon which a 'judgment' may be entered. 'Judgment' cannot be entered upon a finding of foreseeability or the other 'elements' of the claims upon which plaintiff moves for partial summary judgment."); *cf. Pelt*, 539 F.3d at 1280 (noting that "if the moving party has the burden of proof" it "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case").

Because Insight has not met its burden to show that it is entitled to judgment as a matter of law on either of its claims, Insight's Motion for Partial Summary Judgment (Doc. No. 45) is denied.

### B. *NASIC's Motion for Summary Judgment*

NASIC moves for summary judgment on the basis that Insight does not qualify as a claimant under the Bond.[7]  *See* Def.'s Mot. at 1.

Under Oklahoma law, status as a beneficiary under a bond "turns on the intention of the parties." *Barbero v. Equitable Gen. Ins. Co.*, 607 P.2d 670, 673 (Okla. 1980). "To

---

[7] Because Insight's claims for breach of contract and for bad faith are necessarily premised on its status as a claimant, and thus a third-party beneficiary, under the Bond, *see* Am. Compl. at 7-9, establishing that Insight is not a claimant under the Bond is a complete defense to those claims. NASIC's argument that Insight cannot show that it was a claimant is, then, a proper argument to be made in seeking that summary judgment be granted in NASIC's favor on Insight's claims.

determine the intention of the parties, it is necessary to consider and construe the bond and the contract therein mentioned together and to consider the circumstances under which [the] bond was purchased." *Id.*

NASIC argues that the Bond at issue here is a standard payment bond, and the Bond was intended to ensure that laborers and material suppliers will be paid in the event that Icon failed to pay them. The Bond is conditioned on Icon paying "all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of" the UEC-Icon Subcontract. Def.'s Ex. 4 (Doc. No. 77-4) at 1. The Bond defines a "claimant" as:

> [O]ne having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service, or rental of equipment directly applicable to the subcontract.

*Id.* The Bond further provides that any claimant who has not been paid within 90 days "after the date on which the last of such claimant's work or labor was done or performed, or materials were furnished by such claimant," may sue on the Bond for payment. *Id.*

Upon consideration of the undisputed material facts, and viewing all inferences in Insight's favor as the nonmovant, the Court determines that Insight does not qualify as a claimant under the Bond. Under the UEC-Icon Subcontract, Icon agreed to perform three general categories of work for UEC: (1) design and build the TPF in compliance with the specific provisions of the Subcontract, (2) deliver the TPF to Vance Airforce Base, and (3)

install the TPF at Vance Airforce Base.[8]  *See* Def.'s Ex. 3 (Doc. No. 77-3) at 1-3 ("Section 2. Scope of Work").   The Subcontract further provides that Icon would provide the completed TPF buildings and equipment for UEC's use for a minimum of 20 months.   In exchange, UEC agreed to pay Icon a total contract price of $807,766, which includes the sum of $380,000 for 20 payments of $19,000 per month from UEC to Icon for use of the TPF during the Project.  *See id.*

It is undisputed that Insight did not provide any labor or material to assist Icon with the design, manufacture, delivery, or installation of the TPF at the Project site.  *See* Stipulation ¶ 3.   Insight instead bases its claim to be a supplier of material on Icon's obligation under the Subcontract to provide the TPF for UEC's use for a term of months. In essence, Insight argues that although the Subcontract provided for Icon to build and install the TPF, and that Icon did so, the Master Lease Agreement between Insight and Icon—entered into when Icon was finalizing installation of the TPF—converted Icon into a mere lessor of the TPF.  Thus, says Insight, it was from that point forward the "supplier" to Icon of the entire set of buildings and equipment comprising the TPF.  *See* Pl.'s Resp. at 14-15.

Assessing the plain language of the Bond, and the totality of the Insight-Icon transaction, including the Master Lease Agreement, the Court finds that the Bond was not

---

[8] The UEC-Icon Subcontract further requires prompt removal of the TPF upon completion of occupancy.  *See* Def.'s Ex. 3 (Doc. No. 77-3) at 1.  Insight's Amended Complaint alleges that, as of filing, "the [TPF] is still located on the Base and being used by Base personnel." Am. Compl. ¶ 47.  Insight does not claim in its Amended Complaint or summary judgment papers that it has a claim under the Bond relating to the removal of the TPF.

intended to encompass as a "supplier" a party who, after Icon finished building the TPF, purchased the TPF and leased it back to Icon.  Insight provided Icon only money, not material: in exchange for up-front cash funding of $410,000, Icon agreed to give Insight an ownership interest in the completed TPF and, ultimately, to direct UEC's monthly payments to Insight.[9]  To hold that the Master Lease Agreement qualified Insight as a supplier would be to allow Icon to unilaterally expand the potential liability of NASIC on the Bond, essentially making NASIC the guarantor of Insight's provision of funding to Icon.  Structuring Icon's repayment obligation as a lease does not convert Insight into a material supplier—Insight was simply an investor.  There is no basis in the language of the Bond that it was intended to cover a monetary investment.

The Court therefore concludes that Insight does not qualify as a claimant under the Bond.  Because Insight is not a claimant, it is not a third-party beneficiary under the Bond, and it has no contractual or statutory relationship with NASIC on which to bring its claims. The Court therefore finds that NASIC is entitled to summary judgment on Insight's breach of contract claim and bad faith claim.  *See Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1229 (10th Cir. 2012) (explaining that, to have standing to bring contractual or bad-faith claims against an insurer, there must be "a contractual or statutory relationship between the insurer and the third party" (internal quotation marks omitted) (citing *McWhirter v. Fire Ins. Exch. Inc.*, 878 P.2d 1056, 1058 (Okla. 1994)); *Foster-Blackwood v. Liberty Ins. Corp.*, No. CIV-

_____

[9] In Amendment No. 1 to Schedule No. 1 to the Master Lease Agreement, Icon agreed to direct UEC to make its monthly payments for the TPF under the UEC-Icon Subcontract directly to Insight.  *See* Pl.'s Ex. A (Doc. No. 84-1) at 13.

17-1146-R, 2018 WL 738906, at *2 (W.D. Okla. Feb. 6, 2018) ("[G]enerally, a stranger to a contract may not seek relief under theories of breach of contract or the affiliated tort for violation of the duty of good faith and fair dealing.").

## CONCLUSION

As outlined above, Plaintiff Insight's Motion for Partial Summary Judgment (Doc. No. 45) is DENIED.  Defendant NASIC's Motion for Summary Judgment (Doc. No. 77) is GRANTED, and NASIC is entitled to judgment on a matter of law as to both of Insight's claims against it.

Accordingly, this matter is hereby STICKEN from the Court's May 2022 bench trial docket.  NASIC's pending Motion in Limine (Doc. No. 150) is DENIED AS MOOT.

IT IS SO ORDERED this 23rd day of May, 2022.

CHARLES B. GOODWIN
United States District Judge