**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **INSIGHT INVESTMENTS, LLC,** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **NORTH AMERICAN SPECIALTY** ) <br> **INSURANCE COMPANY,** ) <br> ) <br> **Defendant/Third-Party Plaintiff,** ) <br> ) <br> v. ) <br> ) <br> **SASHA M. BELL,** ) <br> ) <br> **Third-Party Defendant.** ) | Case No. CIV-20-788-G |

**ORDER**

Now before the Court are Defendant/Third-Party Plaintiff North American Specialty Insurance Company's ("NASIC") Motion for Partial Summary Judgment and Declaratory Relief (Doc. No. 93) and supplement thereto (Doc. No. 196), seeking relief against Third-Party Defendant Sasha M. Bell. Bell has responded to the Motion (Doc. No. 204), and NASIC has replied (Doc. No. 207).

I. STANDARD OF REVIEW

Summary judgment is a means of testing in advance of trial whether the available evidence would permit a reasonable jury to find in favor of the party asserting a claim. The Court must grant summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A party moving for summary judgment has the burden of showing that the undisputed material facts require judgment as a matter of law in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, the nonmovant need not convince the Court that it will prevail at trial, but it must cite sufficient evidence to allow a reasonable jury to find in the nonmovant's favor—i.e., to show that there is a question of material fact that must be resolved by the jury. *See Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

Parties may establish the existence or nonexistence of a material disputed fact by:

- citing to "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in the record; or

- "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."

Fed. R. Civ. P. 56(c)(1)(A), (B). Though the Court is only required to consider the materials cited by the parties, it may also consider other materials in the record. *See* Fed. R. Civ. P. 56(c)(3). While the Court views the evidence and the inferences drawn from the record in the light most favorable to the nonmoving party, *see Pepsi-Cola Bottling Co. of Pittsburg v. PepsiCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005), "[t]he mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there

2

must be evidence on which the jury could reasonably find for the [nonmovant]." *Liberty Lobby*, 477 U.S. at 252.

When the moving party has the burden of proof at trial, "a more stringent summary judgment standard applies." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008). The moving party cannot carry its burden by "pointing to parts of the record that [the movant] believes illustrate the absence of a genuine issue of material fact." *Id.* Rather, to obtain summary judgment on its own claim or defense, a movant "must establish, as a matter of law, all essential elements of the issue before the nonmovant can be obligated to bring forward any specific facts alleged to rebut the movant's case." *Id.* Thus, if a party who would bear the burden of persuasion at trial lacks sufficient evidence on an essential element of a claim or defense, all other factual issues concerning the claim or defense become immaterial. *See Celotex*, 477 U.S. at 322; *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

## II.  THE SUMMARY JUDGMENT RECORD

The facts relied upon in the discussion below are uncontroverted or, where genuinely disputed, identified as such and viewed in the light most favorable to the applicable nonmoving party.

### A. The Project

This case involves contracts relating to a construction project overseen by the U.S. Army Corps of Engineers for the renovation of a medical facility at Vance Air Force Base near Enid, Oklahoma (the "Project"). United Excel Corporation ("UEC") was the prime contractor for the Project. UEC subcontracted with Icon Construction, Inc. ("Icon") to

3

design, manufacture, and install modular buildings as a temporary medical and office facility during construction, which the parties and agreements referred to as the "Temporary Phasing Facility" or "TPF." On September 14, 2017, NASIC issued a "Subcontract Performance Bond" and a "Subcontract Labor and Material Payment Bond" (the "Materials Bond") (collectively, the "Bonds") on behalf of Icon to ensure performance of the subcontract between Icon and UEC as well as payment for labor and materials. *See* NASIC's Mot. Ex. 3 (Doc. No. 93-3) at 1-2. After the execution of the UEC-Icon Subcontract, the issuance of the Materials Bond, and the construction and delivery of the TPF, Icon entered into a transaction with Plaintiff Insight Investments, LLC ("Insight"), whereby Insight agreed to pay Icon $410,000 immediately in exchange for monthly payments over the course of the Project and a share of the proceeds from selling the TPF after the Project was completed. Icon failed to make the required monthly payments to Insight. Op. & Order of May 23, 2022 (Doc. No. 162) at 2, 10-11. Icon also failed to make payments to its other creditors, who in turn sought payment under the Bonds. *See* NASIC's Mot. at 2.

Insight commenced this litigation, seeking to collect from NASIC under the Materials Bond. *See* Am. Compl. (Doc. No. 15) ¶¶ 48-73. NASIC asserts third-party claims against Bell for breach of contract, contractual exoneration, specific performance/injunctive relief, and *quia timet*. *See* Third-Party Compl. (Doc. No. 34) at 8-17.

B. *The General Indemnity Agreement*

On June 1, 2015—well before the Project that spawned this litigation commenced—Bell and Icon (collectively, the "Indemnitors") executed a General Indemnity Agreement (the "Indemnity Agreement") promising to indemnify NASIC for losses arising from surety bonds executed by NASIC. *See* Indem. Agreement (Doc. No. 141-1) at 1, 4-5. Bell signed the Indemnity Agreement, both in her capacity as Chairman of the Board of Icon and in her personal capacity. *See id.* at 4-5. All signatories are listed as having a Texas address, and the signature of the notary public indicates that the Indemnity Agreement was executed in Texas. *See id.*

The Indemnity Agreement provides, in relevant part:

> 2. <u>Indemnity</u>: The Indemnitors shall exonerate, hold harmless and indemnify the Surety from and against any and all Loss. For the purpose of this Agreement, Loss means any liability, loss, costs, damages, attorneys' fees, consultants' fees, and other expenses, including interest, which the Surety may sustain or incur by reason of, or in consequence of, the execution of the Bonds (or any renewals, continuations or extensions). Loss includes but is not limited to the following: (a) sums paid or liabilities incurred in the settlement of claims; (b) expenses paid or incurred in connection with the investigation of any claims; (c) sums paid in attempting to procure a release from liability; (d) expenses paid or incurred in the prosecution or defense of any suits; (e) any judgments under the Bonds; (f) expenses paid or incurred in enforcing the terms of this Agreement; (g) sums or expenses paid or liabilities incurred in the performance of any Bonded contract or related obligation; and (h) expenses paid in recovering or attempting to recover losses or expenses paid or incurred. Loss expressly includes attorney fees incurred in defending claims, protecting the Surety's interests in any bankruptcy or insolvency proceeding, arranging for the Surety's performance of its obligations, evaluating, settling, and paying claims, seeking recovery under the terms of this Agreement from the Indemnitors, and pursuing the Surety's common law rights to seek recovery of losses from others, including third parties. The Indemnitors agree that their liability shall be construed as the liability of a compensated Surety, as broadly as the liability of the Surety is construed toward its obligee or other claimants.

. . . .

     9. <u>Claim Settlement:</u> The Surety shall have the right to decide and determine in its sole discretion whether any claim, liability, suit or judgment made or brought against the Surety or any of the Indemnitors on any Bond shall or shall not be paid, compromised, resisted, defended, tried or appealed, and the Surety's decision shall be final, binding and conclusive upon the Indemnitors. The Surety shall be entitled to immediate reimbursement for any and all Loss under this Agreement. The Surety shall have no obligation to tender its defense to any Indemnitor. If the Surety elects not to tender its defense to any Indemnitor, then the Indemnitors shall nevertheless remain liable to the Surety for all Loss. An itemized statement of payments made by the Surety sworn to by an officer of the Surety shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety.

     10. <u>Waiver of Notice:</u> Prior and subsequent to entering into this Agreement, the Indemnitors agree to keep themselves fully apprised of the business dealings of the Principal. The Indemnitors shall not rely on the Surety to provide any information concerning the Principal's business dealings. The Indemnitors waive notice of the following: (a) execution of Bonds; (b) the acceptance of this Agreement; (c) any change in the contract price, plans or specifications of any Bonded contract; (d) any notice of default, claim or liability of the Surety; (g) any changes in the signatories to this Agreement; (h) the execution of Bonds by the Surety on behalf of entities not signatory to this Agreement and submitted by any of the Indemnitors; and (i) any act, fact or information coming to the notice or knowledge of the Surety concerning or affecting its rights or liabilities under the Bonds or the rights or liabilities of the Indemnitors.

*Id.* at 1-2.

    C. *NASIC's Demand upon Bell*

NASIC asserts that as a result of issuing the Bonds, it has suffered losses, costs, and expenses totaling $387,204.45, not including the costs and attorney's fees incurred in defending the instant litigation. *See* NASIC's Mot. at 2; *id.* Ex. 1, Matthews Aff. (Doc. No. 93-1) at 11. NASIC has demanded indemnification from Bell, but she has not complied. *See* NASIC's Mot. at 5; Matthews Aff. at 2; NASIC's Mot. Ex. 4, Oct. 13, 2018 Demand Letter (Doc. No. 93-4) at 2. In connection with this litigation, NASIC has

produced the following itemized statement of payments it made "in good faith" under the Bonds:

### EXHIBIT "B"

### ITEMIZED STATEMENT OF PAYMENTS

| Claimant Name | Amount Paid |
|---|---|
| KC Electric: | $ 217,651.45 |
| Intercept Lightning Protection, LLC: | $ 11,400.00 |
| AlarmFX, Inc.: | $ 86,746.57 |
| Culligan of Enid: | $ 1,079.18 |
| **Consultant Fees** | |
| Claims Consulting Services, Inc.: | $ 36,788.24 |
| Apprill Resources, LLC: | $ 3,400.00 |
| **Attorney's Fees** | |
| Robert M. Fitzgerald, Esq.: | $ 32,364.41 |
| Law Offices of T. Scott Leo: | $ $546.00 |
| **Credits** | ($2,771.40) |
| **TOTAL LOSS:** | **$ 387,204.45** |

*See* Matthews Aff. at 2, 11.

III. DISCUSSION

NASIC seeks summary judgment on its claim that Bell has breached the Indemnity Agreement by refusing NASIC's request for indemnification. NASIC also moves for entry of summary judgment on its request for a declaratory judgment finding Bell liable for any losses, costs, and expenses incurred by NASIC in this action.

### A. *Choice of Law*

The Indemnity Agreement does not contain a choice of law provision.[1] In diversity actions, choice of law is determined by the law of the forum state, in this case Oklahoma. *See Elec. Distribs., Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999). Under Oklahoma law, "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Okla. Stat. tit. 15, § 162. In the context of insurance policies, the Tenth Circuit has held that the parties' designation of a place for payment of premiums and benefits constitutes the place of performance under Oklahoma law. *See Cudd Pressure Control, Inc. v. N.H. Ins. Co.*, 645 F. App'x 733, 740-41 (10th Cir. 2016). "Nevertheless, when the language of the contract does not directly *or* implicitly indicate a place of performance, [the Court] will resort to applying the law of the state of contracting." *Id.* at 241.

Here, though the Indemnity Agreement concerns the Indemnitors' obligation to make payments to NASIC, it does not specify where or how the payments are to be made. Accordingly, the Court finds that the Indemnity Agreement neither implicitly nor explicitly indicates a place of performance. Because the Indemnity Agreement was executed in Texas and does not specify a place of performance, the Court concludes that the contract is governed by Texas law. *See* Indem. Agreement at 4-5; *Cudd Pressure Control*, 645 F. App'x at 741.

---

[1] Neither party addresses choice of law in its briefing.

### B. Bell's Obligation to Indemnify NASIC

#### 1. NASIC's Prima Facie Case

"An indemnity agreement is a promise to safeguard or hold the indemnitee harmless against either existing and/or future loss liability." *Dresser Indus., Inc. v. Page Petroleum, Inc.*, 853 S.W.2d 505, 508 (Tex. 1993). "Words of an indemnity agreement are to be given their ordinary or common meaning in determining the intent of the parties." *Krueger Eng'g & Mfg. Co. v. Admiral Truck Servs., Ltd.*, No. 14-01-00035-CV, 2002 WL 576083, at *4 (Tex. App. Apr. 18, 2002).[2]

Here, the Indemnity Agreement provides that Bell is to indemnify surety NASIC for all Loss, as that term is defined in the Indemnity Agreement, and that "[a]n itemized statement of payments made by the Surety sworn to by an officer of the Surety shall be prima facie evidence of the liability of the Indemnitors to reimburse the Surety." Indemnity Agreement at 1-2. Similar prima facie evidence provisions have been recognized as enforceable by Texas courts. *See*, *e.g.*, *Liberty Mut. Ins. Co. v. CL Carson, Inc.*, No. A-11-CA-543, 2013 WL 12392522, at *5 (W.D. Tex. June 19, 2013); *Safeco Ins. Co. of Am. v. Gaubert*, 829 S.W.2d 274, 282-83 (Tex. App. 1992). NASIC has produced a sworn

---

[2] Under Texas law, agreements seeking "to exculpate a party from the consequences of its own negligence" are subject to certain fair notice requirements. *Dresser Indus.*, 853 S.W.2d at 508. These requirements are inapplicable "when the indemnitee establishes that the indemnitor possessed actual notice or knowledge of the indemnity agreement." *Id.* at 508 n.2. Because the Indemnity Agreement at issue here sought to exculpate NASIC from the consequences of the actions of third-party Icon, the *Dresser Industries* fair notice requirements were not triggered. To the extent Bell argues that NASIC's own negligence led to its losses, *see* Bell's Resp. at 7-8, the fair notice requirements are still inapplicable because the record indicates that Bell had actual notice and knowledge of the Indemnity Agreement. *See id.* Ex. 1, Bell Decl. (Doc. No. 204-1) ¶¶ 4-5.

9

itemized statement in accordance with the terms of the Indemnity Agreement. *See* Matthews Aff. at 11. Therefore, to avoid summary judgment on NASIC's claim that Bell has breached that agreement, Bell "must allege that the agreement is invalid or unenforceable" or otherwise point to competent evidence creating a genuine issue as to "the fact and extent of" Bell's liability as an indemnitor. *U.S. Fire Ins. Co. v. Rey-Bach, Inc.*, No. CIV.A.3:02-CV-2133, 2004 WL 1836314, at *2 (N.D. Tex. Aug. 16, 2004); *see Merchs. Bonding Co. v. Gandler-Snider Eng'g Co.*, No. 3:98-CV-0499, 1999 WL 500226, at *5 (N.D. Tex. July 14, 1999).

   2. *Bell's Response*
      a. *Economic Duress*

Bell implicitly argues that the Indemnity Agreement is invalid because it was signed under economic duress. *See* Bell's Resp. at 3. According to Bell, NASIC agent Doug Moore threatened that NASIC would cancel all of Icon's surety bonds if Bell did not sign the Indemnity Agreement, which would have "ruined [Icon] and destroyed Bell financially." *Id.* at 2.

NASIC contends that Moore was Icon's insurance and bonding agent and not NASIC's agent, representative, or employee. *See* NASIC's Reply at 2. Even if Moore was NASIC's agent, however, Bell's argument would still fail. To establish the affirmative defense of economic duress, Bell must show: (1) a threat by NASIC "to do something that [NASIC] has no legal right to do; (2) illegal exaction or some fraud or deception; and (3) imminent restraint such as to destroy free agency without present means of protection." *Krueger Eng'g & Mfg. Co.*, 2002 WL 576083, at *6. Importantly, a lawful threat of loss

10

of future business is not economic duress. *See id.* ("If Admiral had refused to provide the requested indemnification, KEMCO could have rightfully cancelled the contract and gotten its trucking services elsewhere."). Though the prospect of losing NASIC's bonding may have presented Bell with a difficult business decision, she has not shown that NASIC used fraud, physical restraint, or other improper means to achieve her acquiescence. Accordingly, Bell has not shown that she signed the Indemnity Agreement under economic duress and cannot defeat NASIC's claim on this basis.

### b. *Substantiation of Claims*

Next, Bell argues that NASIC has failed to produce sufficient proof that it actually incurred the losses for which it seeks indemnification. Bell also asserts that NASIC made payments on claims without having adequately investigated them. *See* Bell's Resp. at 3-8.

As discussed, the Indemnity Agreement provides that a sworn itemized statement of losses is prima facie evidence of the Indemnitors' liability to NASIC. *See* Indemnity Agreement at 1-2. Accordingly, Bell has no grounds to demand that NASIC produce "documents . . . such as bills and invoices" to support its demand. Bell's Resp. at 3. Instead, NASIC having produced the prima facie evidence agreed to by the parties, it is Bell's burden to point to evidence showing that the payments were not actually incurred. *See U.S. Fire Ins. Co.*, 2004 WL 1836314, at *2.

As to Bell's argument that NASIC inadequately investigated the claims on the bonds, the Indemnity Agreement grants NASIC "the right to decide and determine in its sole discretion" whether to settle claims and provides that NASIC's decision "shall be binding and conclusive upon the Indemnitors." Indemnity Agreement at 2. In *Ford v.*

11

*Aetna Insurance Co.*, as here, "the indemnity agreement vested the surety with the exclusive right to determine whether claims under the bond should be settled." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285 (Tex. 1998) (citing *Ford v. Aetna Ins. Co.*, 394 S.W.2d 693 (Tex. App. 1965)).  The Texas court determined "that the surety was limited only by bad faith, which exceeds negligence or even gross negligence." *Id.* (noting that "bad faith" "requires proof of an improper motive or willful ignorance of the facts").  And, even if NASIC was subject to an additional good-faith requirement, Texas law characterizes the good-faith obligation of indemnitees with the express authority to settle claims as "discretion limited only by the bounds of fraud," with no requirement to conduct a reasonable investigation. *Id.* at 284 (internal quotation marks omitted).

NASIC has presented evidence that it settled the claims in good faith. *See* Matthews Aff. at 2.  Because Bell has pointed to no evidence suggesting that NASIC's conduct in investigating and settling the claims was fraudulent, improperly motivated, or otherwise contrary to the terms of the Indemnity Agreement, she has failed to show a genuine question as to whether the handling of those claims precludes NASIC's recovery for breach of the Indemnity Agreement. *Cf. Ford*, 394 S.W.2d at 698 ("Bad faith on the part of [the indemnitee] may be urged . . . as a defense, but where a genuine issue of material fact in such respect is not raised by the summary judgment evidence, [the indemnitor's] reliance on such defense would be ineffective.").

### c. Ripeness

Bell nominally argues that NASIC's claims against her are not ripe for adjudication. *See* Bell's Resp. at 9-10. "Constitutional ripeness is based on Article III's requirement that federal courts hear only '[c]ases' and '[c]ontroversies.'" *United States v. Cabral*, 926 F.3d 687, 693 (10th Cir. 2019) (alterations in original) (quoting U.S. Const. art. III, § 2). "Because federal courts cannot give advisory opinions, the matter must come to the court in 'clean-cut concrete form.'" *Id.* (quoting *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995)). "The ripeness doctrine addresses a timing question: when in time is it appropriate for a court to take up the asserted claim." *United States v. Sup. Ct. of N.M.*, 839 F.3d 888, 903 (10th Cir. 2006) (alteration, emphasis, and internal quotation marks omitted).

In the instant Motion, NASIC seeks relief for breach of a contract that provides for indemnification on claims NASIC already has paid. Accordingly, the Court finds that the facts are sufficiently developed and the issues ripe for adjudication. *See Cabral*, 926 F.2d at 693.

### C. Declaratory Judgment

Finally, NASIC requests the Court issue "summary declaratory relief" establishing Bell's liability under the Indemnity Agreement for all attorney's fees and costs incurred by NASIC in defending against Insight's claim, as well as "any other losses should it be determined that Insight is entitled to recover from [NASIC]." NASIC's Mot. at 9-10.

"Under Fed. R. Civ. P. 57 and 28 U.S.C. § 2201, the proper procedure by which to obtain a declaratory judgment is to file 'an appropriate pleading' seeking a declaration of

rights. 28 U.S.C. § 2201(a). A 'pleading' includes a complaint or an answer; it does not include a motion. Fed. R. Civ. P. 7(a)." *Mission Air Support, Inc. v. KSNL Aero, LLC*, No. CIV-21-1034-D, 2022 WL 18909355, at *1 (W.D. Okla. Apr. 29, 2022). NASIC did not seek entry of such a declaratory judgment in its Third-Party Complaint, has not sought leave to amend that pleading, and has not cited authority for the Court's consideration of this request at summary judgment. The Court therefore denies this "procedurally improper" request. *Id.*; *accord Est. of Gonzales ex rel. Gonzales v. Brown*, No. 12-CV-495, 2014 WL 4748604, at *5 (N.D. Okla. Sept. 23, 2014).

## CONCLUSION

For the foregoing reasons, Defendant/Third-Party Plaintiff North American Specialty Insurance Company's Motion for Partial Summary Judgment and Declaratory Relief (Doc. No. 93) is GRANTED IN PART and DENIED IN PART, as follows:

1. Defendant/Third-Party Plaintiff North American Specialty Insurance Company is entitled to summary judgment on its breach of contract claim against Third-Party Defendant Sasha M. Bell in the amount of $387,204.45; and

2. The Motion is denied as to the request for issuance of a declaratory judgment.

Judgment in accordance with this Order shall be entered at the conclusion of this litigation. The equitable claims raised in the Third-Party Complaint remain pending.

IT IS SO ORDERED this 20th day of September, 2024.

CHARLES B. GOODWIN
United States District Judge